UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Jason L. Wimble,                       :
    Plaintiff,                     :
                                   :
  v.                               :    File No. 1:05-CV-156
                                   :
Paul Cotton, Lynn Hayward,             :
Barbara Stoodley, Merideth LNU,        :
    Defendants.                    :

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
(Paper 34)

Plaintiff Jason Wimble, a Vermont inmate proceeding *pro se* and *in forma pauperis*, brings this action claiming that he has not been provided adequate psychiatric care while in prison. For relief, Wimble initially sought injunctive relief and compensatory damages. In a prior ruling, the Court dismissed Wimble's claims for injunctive relief. The defendants have now moved for summary judgment, arguing that Wimble cannot collect compensatory damages because he has not alleged a physical injury. The defendants' motion is unopposed. For the reasons set forth below, I recommend that the motion for summary judgment be GRANTED, and that this case be DISMISSED.

Factual Background

In his complaint, Wimble claims that he has been

"sitting in the Alpha Unit of Springfield Jail for 5 months. I have had no current Drs keeping me in this seg unit. I have been mistreated with no actual psychiatric counseling." (Paper 5 at 3-4). Wimble also claims that defendant Lynn Hayward has refused to allow him to return to the "Bravo Unit" because she is afraid of him. The facts at issue in the complaint took place prior to June, 2005.

In support of their motion for summary judgment, the defendants have submitted the affidavit of Dr. Paul Cotton. Dr. Cotton is a psychiatrist who provided psychiatric services to Vermont inmates through February 15, 2006. Because the summary judgment motion is unopposed, Dr. Cotton's affidavit is uncontroverted.

According to Dr. Cotton's account, the events giving rise to this lawsuit began in December, 2004, and ended when Wimble was transferred from the Southern State Correctional Facility ("SSCF") to the Northern State Correctional Facility ("NSCF") in May, 2005. Dr. Cotton describes Wimble as "a 37 year old man with a history of a major affective disorder. His condition was characterized as a psychosis and mood disorder and

schizoaffective disorder . . . . Mr. Wimble had been admitted to the Vermont State Hospital many times because of his condition and associated behavior." (Paper 34-2, Cotton Aff., at 4-5).

When Dr. Cotton met with Wimble in December, 2004, Wimble was incarcerated at SSCF's Alpha Unit. As compared with the Bravo Unit, the Alpha Unit is "a more secure and restrictive housing unit for prison inmates who are receiving mental health services." Id. at 2. Because of disruptive behavior, Wimble was not eligible for the Bravo Unit at that time.

When Cotton met with Wimble in January, 2005, however, Wimble's behavior had stabilized and he had been placed in the Bravo Unit. One of the goals of placing Wimble in the Bravo Unit at SSCF "was to allow him to work on living in a less restrictive setting to [sic] that he could meet his goal of becoming a candidate for release to the community." Id. at 3. Release to the community would require a transfer to Northwest State Correctional Facility ("NWSCF"), where his release could be supervised by Northwest Counseling and Support Services. Id. at 4.

Wimble was sent to NWSCF on January 4, 2005. At NWSCF, his behavior deteriorated, and the Department of Corrections determined that he should participate in the Cognitive Self Change ("CSC") program. Wimble did not want to participate in the CSC program, and subsequently refused to meet with mental health staff. On February 16, 2005, after a violent episode, he was returned to SSCF. Id. at 5-6.

Over the next two months, Wimble's behavior was inconsistent. At times he was cooperative, while at other times he continued to show anger, refused to meet with mental health staff, and declined his prescribed medications. On March 15, 2005, Wimble threatened Dr. Cotton and others. Dr. Cotton determined that Wimble was dangerous, and that defendant Lynn Hayward should no longer see Wimble as a therapist. Dr. Cotton maintained responsibility for Wimble's psychiatric care, and defendant Barbara Stoodley continued to see Wimble with a focus on medication and nursing care. Id. at 7.

In May, 2005, Wimble was allowed visits to the less-restrictive Bravo Unit, conditional upon his good behavior. On May 10, 2005, he confronted Hayward in the

Bravo Unit and threatened her family. Specifically, Wimble stated that he knew where Hayward lived and that he would "talk to her" when he was out of prison. After this incident, he was no longer allowed in the Bravo Unit. Id. at 8-9.

On May 17, 2005, Wimble filed two grievances against the mental health team claiming mistreatment, and requesting a return to the Bravo Unit. In response to the grievances, Dr. Cotton expressed his opinion that Wimble should not be allowed in the Bravo Unit. Before the grievances could be acted upon, Wimble was transferred to NSCF. Id. at 9-10.

Wimble filed his complaint in this case on June 7, 2005. As stated above, his complaint claimed that he was not receiving mental health treatment, and that Hawyard was barring him from visiting the Bravo Unit because she was afraid of him. For relief, Wimble sought (1) a transfer to the Bravo Unit; (2) $250,000 for mental anguish; (3) Hayward's firing; and (4) community release. In a prior order, the Court dismissed Wimble's claims for injunctive relief based upon his failure to join the Department of Corrections as a party. The defendants now

move for summary judgment on Wimble's claim for compensatory damages.

## Discussion

I. <u>Summary Judgment Standard</u>

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A fact is material if it "might affect the outcome of the suit under the governing law."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  <u>Gayle v. Gonyea</u>, 313 F.3d 677, 682 (2d Cir. 2002)(quoting <u>Anderson</u>, 477 U.S. at 248).

On a motion for summary judgment, all reasonable factual inferences must be drawn in favor of the non-moving party.  <u>See</u>, <u>e.g.</u>, <u>Savino v. City of New York</u>, 331 F.3d 63, 71 (2d Cir. 2003)(citing <u>Anderson</u>, 477 U.S. at 255).  However, to survive a motion for summary

judgment, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)).  While the submissions of *pro se* litigants are liberally construed, <u>see</u>, <u>e.g.</u>, <u>Burgos v. Hopkins</u>, 14 F.3d 787, 790 (2d Cir. 1994), the fact that Wimble is "proceeding *pro se* does not otherwise relieve [him] from the usual requirements of summary judgment." <u>Fitzpatrick v. New York Cornell Hosp.</u>, 2003 WL 102853, at *5 (S.D.N.Y. Jan. 9, 2003); <u>accord</u> <u>Feurtado v. City of New York</u>, 337 F. Supp. 2d 593, 596 (S.D.N.Y. 2004) (citing cases).

II.  <u>Failure to Allege Physical Injury</u>

The defendants move for summary judgment on the basis of Wimble's failure to allege actual, physical harm.  It is well established that a prisoner may not collect compensatory damages for a constitutional violation without showing that he has suffered a physical injury.  <u>See</u> <u>Thompson v. Carter</u>, 284 F.3d 411, 416 (2d Cir. 2002).  This rule arises out of the Prisoner Litigation Reform Act ("PLRA"), codified at 42 U.S.C. §

1997e(e), which provides that "[n]o Federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  42 U.S.C. § 1997e(e).

Here, Wimble alleges only "mental anguish" resulting from the defendants' alleged failure to provide him with adequate psychiatric care.  Further, Dr. Cotton's affidavit makes clear that he saw no evidence of a physical injury "caused by the decision to keep [Wimble] off Bravo Unit and away from therapist Lynn Hawyard after May 10, 2005."  (Paper 34-2, Cotton Aff. at 11-12). Consequently, under the strict mandate of the PLRA, Wimble cannot collect compensatory damages as a result of his claims.  See Thompson, 284 F.3d at 419 (noting that district court could have dismissed complaint if plaintiff sought "damages solely for an emotional injury without any claim of physical injury); Bussey v. Phillips, 419 F. Supp. 2d 569, 587-88 (S.D.N.Y. 2006). Because compensatory damages are the only form of relief remaining after the Court's rulings on the defendants' previous motions to dismiss, the defendants' motion for

summary judgment should be GRANTED and this case should be DISMISSED.[1]

## Conclusion

For the reasons set forth above, I recommend that the defendants' motion for summary judgment (Paper 34) be GRANTED, and that this case be DISMISSED.

Dated at Burlington, in the District of Vermont, this 2nd day of February, 2007.

>                    /s Jerome J. Niedermeier
>                    Jerome J. Niedermeier
>                    United States Magistrate Judge

Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  See Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).

---

[1] Because Wimble is proceeding *in forma pauperis*, service in this case was accomplished by the U.S. Marshals Service.  The defendant who was named only by the first name of "Meredith" has not yet been served, although service via waiver was attempted and returned unexecuted.  I therefore recommend that any claims specifically involving defendant "Meredith" be dismissed without prejudice.